**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EFRAIN ALCARAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 19-CV-01734 |
| | ) | |
| RANDY PFISTER | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is petitioner Efrain Alcaraz's petition for a writ of habeas corpus per 22 U.S.C. § 2254. The petitioner was convicted in the Circuit Court of Cook County of first-degree murder and aggravated battery with a firearm and was sentenced to 75 years in prison. The petition challenges his sentence on three grounds: (1) the sentence was excessive and unconstitutional; (2) the assistance provided by his trial counsel was ineffective; and (3) the sentence was unconstitutional based upon newly discovered evidence of police and judicial misconduct. For the reasons detailed below, the petition is denied.

**BACKGROUND**

In October 2008, Maximino Aguero and Danny Calderon were shot, with the latter's injuries proving fatal. Resp. 1, ECF No. 15. At trial, Daisy Baez testified to witnessing the shootings. Resp. Ex. M LL-32-37. As she sat on a stoop, Baez testified, she saw Aguero and another male (Pedro Montalvo) standing across the street talking. She described seeing two men in a red jeep drive by her block several times before stopping at the street corner, at which point the passenger, wearing a dark hooded sweatshirt and a blue Yankees hat, got out of the car and fired two shots at Aguero and Montalvo, hitting Aguero in the back. A few moments later, Baez

saw Calderon come out of a house, at which point the shooter fired five shots at Calderon before getting back into the jeep. *Id.* at LL-34-37. Baez identified the shooter as the petitioner and explained that police pulled over the red jeep almost immediately after the shooting because people were chasing after it. *Id.* at LL-38. At that point, police arrested the petitioner and the driver, Alejandro Tinoco. *Id.* at MM-46. One of Calderon's friends, Salvador Villasenor, also testified to seeing someone get in a red jeep and drive away shortly after the shooting. *Id.* at LL-95.

One of the arresting officers, Timothy Kastler, testified that after he and his partner pulled over the jeep, he saw the petitioner remove a dark article of clothing and throw it in the backseat. *Id.* at MM-37-38. A blue Yankees hat was also found on the dashboard of the car. *Id.* at MM-44. An expert also concluded that the sweatshirt's cuff "either contacted gunshot residue or was in the environment of the discharged firearm." *Id.* at MM-164.

A camera outside one of the residences on the block captured Calderon's shooting, although the footage was somewhat "distorted" due to a porch light in front of the camera. *Id.* at MM-101. Even with the distortion, however, the investigating police officer was able to make out "a male individual standing on the sidewalk, another approach him. . . what appeared to be a muzzle flash, a car pull up and then the individual that was behind that muzzle flash is gone." *Id.* at MM-102.

To combat this evidence, the defense hypothesized in its closing argument that the driver of the jeep, Alejandro Tinoco, was responsible for the shooting, rather than the petitioner. *Id.* at NN-36. During rebuttal, the state replayed the video footage for the jury while commenting:

> They want to try to blame Tinoco from here to Christmas, it's not him. Tinoco, the guy who has so much to hide. Look—here—you heard before there is Danny walking out[,] you could see him in the white shirt, you are able to see the [figure] of this defendant coming from this direction, one car passed kind of obscured it, but he's going to appear from here—there he is, murdering Danny, getting in the jeep, people coming out chasing after him—you could see the figures there.

2

*Id.* at NN-67. The prosecutor, after conceding that the video was "blurry" and "bad," concluded by stating that "[a]ll the witnesses in this case, all the evidence in this case clearly establish one thing and one thing only, this defendant is guilty." *Id.* at NN-68; *Id.* at NN-69.

After sentencing, the state appellate court affirmed the judgment and the Illinois Supreme Court denied the petitioner's petition for leave to appeal. Resp. Ex. A, F. After the circuit court then dismissed the petitioner's pro se petition for post-conviction relief, the state appellate court affirmed and the Illinois Supreme Court again denied his petition for leave to appeal. Resp. Ex. G, L. The petitioner then filed a timely petition for a writ of habeas corpus in this Court. At the petitioner's request, the Court initially stayed proceedings on the petition to permit the petitioner to present his third claim in a state court post-conviction petition, conceding that the claim was unexhausted. ECF No. 7. The Court directed the petitioner to file the state court petition by June 28, 2019, or explain his failure to do so. Two months later, the state court petition had not been filed and the petitioner had not provided any reason for that failure, so the Court lifted the stay and twice invited the petitioner to file a reply to the response of the respondent.[1] ECF Nos. 11, 17. The petitioner, however, did not file a reply. In other words, the petitioner has taken no action to advance his petition since filing it in this Court.[2]

---

[1] The habeas petition stated that the *Brady* claim "is in the process of being filed in the Circuit Court of Cook County." To date, no evidence of any such filing has been provided to the Court.

[2] The petitioner's lack of response cannot be attributed to transfer to a different institution. According to the Illinois Department of Corrections Inmate Locater, the petitioner remains at Stateville, where he was incarcerated when he filed the petition. *See* https://www2.illinois.gov/IDOC/OFFENDER/Pages/InmateSearch.aspx.

## DISCUSSION

Under 28 U.S.C. § 2254(d)(1)-(2), a federal court may grant a writ of habeas corpus to a petitioner incarcerated due to a state court judgment only under certain circumstances. The decision must have been "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). This standard is a deferential one, and habeas corpus petitioners face a difficult burden in showing that a state court judgment was unreasonable. For the reasons detailed below, the petitioner has failed to meet that burden.

### I. Ground One: Excessive Sentence

The petitioner first argues that his 75-year sentence was unconstitutionally excessive "particularly in light of [his] youth and attendant characteristic[]s, non-violent criminal history, and his potential for rehabilitation." Pet. for Writ of Habeas Corpus 8, ECF No. 1. The petitioner's sentence consisted of 35 years for first-degree murder with an additional 25-year mandatory enhancement for the use of a firearm, plus 15 years for aggravated battery with a firearm. *Id.* The petitioner concedes that the sentence, while more punitive than the statutory minimum, was within the state sentencing guidelines. *Id.* Nonetheless, he argues that the sentence was cruel and unusual because he was only 20 years old at the time of the offense and there were several mitigating factors that supported a more lenient punishment. *Id.* at 8-9.

The respondent posits that this claim is procedurally defaulted.[3] Although the petitioner's direct appeal included an excessive sentence claim, it couched the argument solely as a violation of state law. *See, e.g.,* Resp. Ex. B 13-14 ("Both the Illinois Constitution and the Unified Code of

---

[3] Because the petitioner failed to file a reply brief, the respondent's arguments are all uncontested.

4

Corrections require that every sentence be imposed with rehabilitation of the offender as one of its objectives.") (citations omitted).[4] The Court agrees with the respondent that because the petitioner failed to fairly present his excessive sentence argument as a violation of federal law, it is therefore procedurally defaulted. "For a claim to be 'fairly presented,' the petitioner must place before the state court both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on that basis.'" *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017). The petitioner did not do so here, and thus his argument is procedurally defaulted.[5]

Moreover, even if the petitioner had fairly presented his federal claims, there is no "clearly established federal law" that has been violated here pursuant to § 2254(d). In his habeas petition, the petitioner presents a comprehensive summary of evolving trends in U.S. Supreme Court decisions relating to juvenile offenders. *See, e.g., Miller v. Alabama*, 567 U.S. 460 (2012) (finding unconstitutional mandatory life sentences without parole for juvenile offenders); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth and Fourteenth Amendments preclude the execution of juvenile offenders); *Johnson v. Texas*, 509 U.S. 350, 367 (1993) (explaining that "a defendant's youth is a relevant mitigating circumstance that must be within the effective reach of a capital sentencing jury"). He also lays out the wealth of social science research that indicates that brain development can continue into the mid-20s. Pet. for Writ of Habeas Corpus 13-17. None of

---

[4] The petitioner's direct appeal briefly gestures to federal case law to argue that the age of 18 should not be the sole determinant of youth, but the alleged excessiveness of his sentence is otherwise framed only as an issue of state law. Resp. Ex. B 17.

[5] A procedural default can be excused upon a showing of cause and prejudice. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986) ("[A] federal habeas petitioner who has [procedurally defaulted] must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim.") (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). The petitioner made no such argument in the petition itself and did not reply to the respondent's response brief.

this argument, however, constitutes federal law that has been clearly established and violated. The petitioner was not sentenced to life without parole or death, and also was not a juvenile at the time of the offense, making both *Miller* and *Roper* inapposite. And while the other case law and social scientific research make a coherent argument for considering youth to be a mitigating factor at sentencing, there is no clearly established federal law prohibiting a state court from sentencing a 20-year-old offender to 75 years in prison with the possibility of parole. The petitioner's argument, therefore, would fail on the merits even if it had not been procedurally defaulted.

**Ground II: Ineffective Assistance of Trial Counsel**

The petitioner next raises a claim of ineffective assistance of trial counsel based on his attorney's failure to object to the state's comments in rebuttal made while the video tape footage was replayed for the jury. Pet. for Writ of Habeas Corpus 25. To succeed on an ineffective assistance claim, a habeas petitioner must show first that counsel was deficient to the point of making mistakes significant enough to violate the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must also then demonstrate that the deficiency "prejudiced the defense" to such an extent as to violate his right to a fair trial. *Id.* As such, the key issue at hand is whether the Illinois Appellate Court's determination that the petitioner's trial counsel provided constitutionally adequate representation was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This reasonableness standard requires this Court to grant a significant amount of "deference and latitude" to the state court decision. *Id.* Moreover, because the petitioner here must overcome the "highly deferential" unreasonableness standards established under both § 2254(d) and *Strickland*, he faces an especially difficult burden requiring him to prove that there is not a single "reasonable argument" that his trial counsel satisfied the *Strickland* standard. *Id.* at 105.

6

The state appellate court, in denying the petitioner's pro se post-conviction appeal, reasonably rejected the petitioner's claim. In his habeas petition, the petitioner reiterates the argument that he made in his post-conviction appeal that the government's commentary during rebuttal was a material misstatement. According to the petitioner, the prosecutor wrongfully argued that the video actually depicted the petitioner carrying out the murder, when in reality, the video was too distorted to make out the faces of anyone captured on frame. Pet. for Writ of Habeas Corpus 26. As the state appellate court rightfully pointed out, however, the trial transcripts directly contradict this version of events. The prosecutor referred only to the "figure" of the defendant, and even expressly characterized the video as "blurry" and "bad." The state appellate court also rightfully reasoned that the government did not argue that the footage in and of itself conclusively established the petitioner's guilt, but rather only when considered in conjunction with the other evidence: the two key witnesses' testimony, the sweatshirt, the hat, and the analysis of the sweatshirt sleeve.[6] Because the state appellate court rightfully found that the petitioner's claims were meritless and that the prosecutor's comments were not improper,[7] the petitioner's claim must

---

[6] Furthermore, even if the failure to object had constituted a violation of the Sixth Amendment, which it did not, the petitioner has not made a sufficient showing that the resulting prejudice meets the bar of the second *Strickland* prong. Because the prosecutor's comments were made simultaneously as the video played, the jury had the opportunity to judge for itself the veracity of the comments—and thus any prejudicial impact of the comments was limited.

[7] The petitioner also fleetingly argues that the prosecutor's statement during rebuttal also improperly vouched for Baez's testimony. Pet. for Writ of Habeas Corpus 27. The petitioner contends that Baez's testimony was "uncorroborated" and that the prosecutor's statement, by misrepresenting what was actually occurring in the video, was improperly designed to bolster the credibility of a key witness. *Id.* While the petitioner is correct that prosecutors may not relay "personal impressions" to the jury regarding witnesses' credibility, *United States v. Young*, 470 U.S. 1, 17 (1985), he fails to adequately explain how the prosecutor's comments, which did not mention Baez by name or even refer to her indirectly, let alone describe the prosecutor's own views of her credibility, could be considered improper vouching.

fail—especially when taking into account the stringent requirements under *Strickland*.[8] *See Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001) (failing to object to admissible evidence is insufficient to satisfy either *Strickland* prong).

**Ground III: Police and Judicial Misconduct**

The petitioner's third and final claim is that the state violated *Brady v. Maryland* by failing to disclose misconduct on the part of some of the police officers and the trial judge involved with his case. 373 U.S. 83 (1963); Pet. for Writ of Habeas Corpus 30. The petitioner admitted that he had not raised the issue in any of the previous state court proceedings but stated that he intended to file a successive petition for post-conviction relief in state court. *Id.* at 31. To that end, the Court granted the petitioner's request for a stay so that he could fulfill the exhaustion requirements. ECF No. 7. Nonetheless, the petitioner failed to file the successive petition or an explanation as to why he failed to do so. The *Brady* claim has therefore not been exhausted in state court and is procedurally defaulted. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) ("[W]hen the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim.") (citations omitted).

\*   \*   \*

For the reasons stated above, the petitioner's petition for a writ of habeas corpus, ECF No. 1, is denied. Because this is a final decision ending all proceedings before this Court, the petitioner is only entitled to an appeal if he obtains a certificate of appealability by showing denial of a

---

[8] The petitioner also maintains, with almost no accompanying justification, that his attorney's failure to raise this issue on direct appeal resulted in ineffective assistance of appellate counsel. Because trial counsel had no reason to object to the prosecutor's comments, as explained *supra*, an appeal on those grounds would have been meritless. As a result, this claim too must fail.

8

constitutional right. 28 U.S.C. §2253(c)(1). The Supreme Court has explained that this standard is governed by whether a petitioner can demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). The petitioner has made no such demonstration here and, accordingly, the Court declines to issue a certificate of appealability. If the petitioner seeks to appeal, he must obtain a certificate of appealability from the United States Court of Appeals for the Seventh Circuit.

Date: August 20, 2020

John J. Tharp, Jr.
United States District Judge

9